Caldwell, J.
The first error assigned on the record of the court of common pleas, is, that the court erred in not ruling out the testimony of Daniel Hammond, he being an interested witness. This witness was called by Bezaleel Hammond, the plaintiff below, and testified in the *343 cause. After his testimony was through, several witnesses-were called, who gave evidence, tending to prove that he was a partner of said plaintiff, and had an interest in the property in controversy. The evidence to this point is strong. It does not, however, appear from the bill of exceptions that any objection was taken to his testifying. He was not interrogated as to his interest, nor does it appear that the court was asked to rule out his testimony. If the opposite party would avail himself, on error, on account of an interested witness being allowed to testify, he should, if the fact of interest were known to him, object to the witness testifying; or if by evidence after-wards offered in the case, the interest of the witness should become apparent, he should ask the court to rule it out. Nothing of this kind being done, it was not error in the court to permit the testimony of the witness to go to the jury, although he might have been interested.
It is alleged that the court erred in ruling out the testimony of John T. Leslie. This witness was called for the purpose of proving that Daniel Hammond was an interested witness. He testified that it was generally reported in the neighborhood that Bezaleel and Daniel Hammond were partners, but that he knew nothing about the matter of his own knowledge, nor had-he ever heard any thing respecting it from either of the Hammonds. We think the evidence was incompetent, a,nd that the court acted properly in ruling it out. If the Hammonds, by word or deed, had held themselves out to the world as partners, that might have been proved ; but the neighborhood report, without proving any act of theirs, was not competent evidence to prove that they were partners.
The defendant on the trial offered to prove that it was a custom amongst millers, that when a person took wheat to a mill, and consented to its being mingled with the miller’s, that the property in the wheat passed to the miller. The court refused to admit this evidence. The custom offered to be proved in this case was contrary, as we think, to the rule *344 of law. Where an article of the same kind and value, which is calculated by the bushel or pound, is mingled together by the consent of parties, each party is entitled to have divided to him so many pounds or bushels as he may have put in — and is recognized in law to have a property in so much as he may have put into the common stock.
Evidence of custom may properly be given to explain and give the proper effect to the contracts and acts of parties; but it would be carrying the doctrine too far to permit a custom to change the title to property, contrary to an established rule of law. The court decided correctly in refusing to admit the evidence.
The court charged the jury that if wheat was delivered by Hammond to be ground by the Webbs, in payment .of their two hundred dollar note, the property in the wheat, by such delivery, would not pass to the Webbs ; that the two hundred dollar note did not in terms connect itself with the first agreement made between Bezaleel Hammond and George Webb, and that whether the Webbs, in performing their promise to pay two hundred dollars in grinding as specified in their said note, were to be governed by the stipulations by the first agreement of Hammond and George Webb, was a matter to be determined by the jury from the evidence. They further charge that parol evidence was admissible to prove that fact, and as there was evidence on that question, that the jury would consider it in coming to a conclusion on the subject. We do not discover any error in this charge. The Webbs, in the two hundred dollar note, merely agreed to pay the amount in grinding. That grinding had to be done in a certain manner,' and on certain terms. If no price was fixed, before the grinding was done,'then the Webbs would be entitled to receive credit for so much as the work was worth, and Hammond would be held to have im pliedly promised to allow them that amount. Or the parties might agree upon what was to be ground, and the price al lowed for the same, eithey verbally or in writing, and such agreement could be proved, by parol evidence, if verbally *345 made, or by the written instrument, if reduced to writing. And if the wheat was delivered under both these contracts, the first fixing the price at which the grinding was to be done and specifying the article to be ground, and the other specifying the quantity to be ground, such fact might be proved by parol; that it would neither be adding to, contradicting, or varying these written agreements. The one would still evidence how much was to be done, and the other the terms on which it was done. The parol evidence in that ease would merely show the performance of these agreements. And as the court say there was evidence in the case, that was proper for the jury to consider in determining the question whether this wheat was delivered in performance of these two contracts. The court read a long extract from Story on Bailments, page 44, (on the subject of a mixture of corn, etc.,) which they told the jury was good law, and applicable to the ease on trial. This is assigned for error. As the extract is long, we do not intend to refer to it specifically. We would merely say that, as the court said in that case, we suppose it to be good law, and the evidence in reference to the mingling of the wheat, certainly, made it applicable to the case.
The court charged the jury that if they should find that the wheat in the mill was -the property of the Webbs; and that the Webbs were indebted to Hammond, and that after the Webbs left, the wheat out of which the flour was ground was delivered over to Hammond in payment of his claim against the Webbs, by a person authorized to do so, that the verdict should be for the plaintiff Hammond. This is assigned for error. We do not see any error in this charge.
The defendants asked the court to charge: That they might look to the circumstances attending the delivery of wheat by the plaintiff, to ascertain whether such delivery was under and in performance of the note of January 26, 1847, or not. And that if the jury should find that there was an understanding or agreement, either expressed or implied, between Webbs and the plaintiff, at the time the wheat was *346 delivered by Hammond, that Hammond was to receive flour for it, without reserving flour to be made out of the specific wheat delivered, that a sale of the wheat and not a bailment was imported, and that such understanding might be inferred from the acts and declarations of the parties. This charge the court refused, which refusal is assigned for error.
Now the charge asked embraced several different propositions. A part, taken by itself, was no doubt good law, and-proper to be given to the jury in the case — a part had already been given to the jury by the court. In determining, however, whether the court erred in refusing the charge, the charge must be taken as a whole. And the question, on error, for refusal to charge, is whether the whole charge asked was law, and proper to be given to. the jury in the case. The party presents his own ideas, in his own form, and asks the court to adopt them. If the court cannot adopt the whole they may refuse the whole. There was one proposition embraced in this charge that we think was erroneous ; and that was, that if Hammond was to receive flour for the wheat, unless such flour was made out of the specific wheat delivered, the% jury should consider it a sale of the wheat, and not a bailment. We have already given our views of the law in reference to the mingling of wheat by the consent of the owners, or other articles admitting of a similar division. Each party retains the property in a quantity equal to what he has put into the common stock. Nor do we think that it necessarily alters the case that the party is to receive his return in flour, as is alleged in this case, at a barrel of flour for so many bushels of wheat. This is but another mode of dividing to the party his property in the flour, in which it was agreed by the parties it should be received. If so many pounds of flour was considered as equivalent to a bushel of wheat, then receiving flour at that rate would, to all intents and purposes, be the same as a division of the wheat. We think then that it was "not necessary to create a bailment, that the flour should be made *347 out of the specific wheat delivered,' and that the court did not err in refusing the charge. We do not discover any error in the record.

The judgment of the Supreme Court will be affirmed.